IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

FORT SMITH DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

MAR 1 8 2019

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

NOAH STEFFY                                                    PLAINTIFF

V                         Case no. 2 : 19 cv 2040

CITY OF FORT SMITH,                                           DEFENDANTS

CITY ADMINISTRATOR CARL GEFFKEN,

JIMMIE DEER, RICK RUTH,

NEIGHBORHOOD SERVICES

SUPERVISOR &

INSPECTORS

## **COMPLAINT**

### **AND TEMPORARY EMERGENCY RESTRAINING ORDER**

#### INTRODUCTION

This lawsuit is about a municipal government whose focus on generating revenue drives its administration of justice. The defendant in this case is the City of Fort Smith, Arkansas, (or the "City"), and City employees which have turned the City's code and Ordinance enforcement and municipal court (aka District Court) into revenue-generating machines.

**1.** The Defendant's search for revenue has resulted in an unprecedented governmental intrusion into the homes of its residents. Since 2010, the Defendants have increased the number of non-traffic tickets it has levied against its residents under their "Nuisance Ordinance" and resulting seizures of privately-owned property by more than 200%. For their 2018 Budget, the City anticipated receiving approximately $3 Million in revenue from fine and fees and seizures—or roughly $35 for every resident of the town, including infants, the elderly, and the infirm.

**2.** The U.S. Supreme Court has held that municipal courts cannot have, or appear to have, an independent interest, such as a financial interest, in obtaining convictions. The U.S. Supreme Court has also stated that the government violates a defendant's constitutional rights when prosecutors and law enforcement have a financial interest in convicting the defendant. Therefore, a municipality may not use, or appear to use, its municipal court, municipal prosecutor, police department, or property code enforcement officers to generate revenue in order to fund the municipality, including those very departments and individuals. But municipalities that budget to receive fines and forfeitures revenue, like the Defendants, do exactly that: They are using, or appearing to use, their municipal courts, prosecutors, police, and code enforcement officers to generate revenue. Municipalities that rely on such revenues to balance their budgets, as the Defendants in this case do, create financial incentives to ticket, convict, and fine defendants. These financial incentives are unconstitutional.

**4.** Fort Smith's municipal court personnel have a financial incentive to convict defendants. This financial incentive to convict infects Fort Smith's municipal court (aka District Court) with a bias or an appearance of bias in violation of the U.S. Constitution. Moreover, Fort Smith Neighborhood Services personnel—who are paid from Fort Smith's revenues and serve at the ultimate pleasure of its City Administrator Carl Geffken—have an incentive to ticket and prosecute to raise revenue. The same is true of the independent contractors whom Fort Smith and Defendants employ to "abate" code enforcement tickets against property owners and "bring property into compliance" with its "Nuisance Ordinance". This financial incentive to ticket and prosecute injects an unconstitutional financial bias or an appearance of such bias into law and code enforcement and prosecutorial discretion.

**5.** Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Fort Smith's policy and practice of budgeting for fines, fees, and forfeitures revenue, and vigorously ticketing and convicting residents in order to raise revenue, is unconstitutional.

**6.** The Defendants often ticket, or threaten to ticket, residents for things that are not even in the City's municipal code called "Nuisance Ordinance", which is vague and overbroad and often subject to different individual interpretations. The Defendants have also manufactured "violations" of their so-called "Nuisance Ordinance", attached as Plaintiff's Exhibit #1, as retaliation against residents who raise concerns. Defendant's policy and practice of relying on fines, fees, and seizures to generate revenue violates the Due Process and Excessive Fines Clauses and trashes the Fourth and Fifth Amendments of the U.S. Constitution and exceeds the City's police powers. In doing so, the City has harmed and continues to harm Fort Smith residents and Plaintiff and his family.

**7.** Plaintiff therefore brings this suit to vindicate his fundamental civil rights, obtain injunctive relief, including a Temporary Emergency Restraining Order, to ensure that his rights will not be violated again, and to request a declaration from this Court that Fort Smith's policies and practices in this regard are unlawful. Plaintiff also seeks a preliminary and permanent injunction restraining the City from acting in furtherance of any policy, Ordinance, practice, or custom that violates Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff further seeks a declaration and injunction against Fort Smith's policy and practice of budgeting to receive revenues from fines, fees, and forfeitures and/or seizures.

## II. JURISDICTION AND VENUE

1. This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 et seq., and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue in this Court is proper under 28 U.S.C. § 1391.

## III. FACTUAL ALLEGATIONS

**1.**     From 2007 to 2016, 4,103 properties had liens placed against them by Defendants after the Defendants contracted with regular private sector contractors to bring the targeted properties "into compliance" with its "Nuisance Ordinance" and assessed a 10% penalty on top of the costs, totaling $2,775,514.40. The overwhelming majority of those liens, 84.5% (3469), were placed on properties and property owners on the north, or "poor", side of town, specifically in a corridor that is roughly 22 square blocks in radius. Many of the properties were seized by Defendants and sold for much less than fair market value to a local non profit group, "Fort Smith Housing Authority", where low income and subsidized housing units were constructed. Many times during the same period employees and officials with the City also served on the Board at Fort Smith Housing Authority. Plaintiff resides in that 22 square block area.

**2.**     Defendants significantly fund and maintain the offices of the City judge and the City prosecutor who adjudicate the tickets and levy fines, costs, and seizures in citation proceedings initiated and brought by the City Department that enforces and uses the "Nuisance Ordinance" as its authority, "Neighborhood Services".

**3.**     With no clearly understandable definitions, the Defendants also ticket residents for harmless conditions it terms "nuisances," and which should be subject to civil abatement

proceedings, not criminal citations or fines and seizures: including having dead vegetation on their property; and having fallen trees or a limb, cut shrubs, overgrown vegetation, or weeds more than six inches in height; toys and lawn furniture; campers and so-called outside storage; "aesthetic hazard". (see Plaintiff's Ex 1).In addition, the City regulates things that are not included in its Code, including unpainted foundations, small cracks in driveways, chipped or aging layers of paint, and unpainted or unstained wood fences.

**4.** The Defendants have never established that a true public health risk exists to justify their Nuisance Ordinance and enforcement actions. Other than financial, the Defendants have never established a compelling interest that is furthered by their Nuisance Ordinance and their enforcement actions related to it. Plaintiff was repeatedly targeted by the Defendants using the "Nuisance Ordinance".

**5.** Defendants also give themselves authority and intimidate neighbors of a targeted property into allowing "Neighborhood Services" inspectors onto the neighboring property to inspect the target property for "violations" of its criminal "Nuisance Ordinance", conducting illegal searches that bypass the Fourth Amendment. On numerous occasions beginning on or about March 22, 2016 and for a period of months Neighborhood Services staff conducted such searches against Plantiff and targeted his property.

**6.** Fort Smith's Nuisance Ordinance "Courtesy Notice of Violation" and tickets do not inform residents what provisions they are accused of violating, despite being labeled as "complaint and information[s]." The Notice and tickets sometimes refer to an "ordinance no." These numbers refer to the enactments, not Ordinance provisions. These enactments sometimes cover many sections of the Ordinance, making it impossible to tell which specific part the resident has violated, and without providing them with any information about how the resident has violated them. Residents, including Plaintiff, are often also cited for inapplicable parts of the "Nuisance Ordinance".

**7.** Because set penalties are not specified clearly in the Nuisance Ordinance or elsewhere, the default rule is that a "violation" is punished by City court fiat and redundantly applied, excluding the required separate Due Process. For example, the City judge can simply order a defendant to have been in "violation" for "x" number of days and apply the "Nuisance Ordinance's" vague daily punishment for thousands of dollars with no hearing, process, or even proof of those supposed daily "violations" nor legal justification of repetitive punishments often meted out by the City judge. The US Supreme Court has ruled repetitive punishments unconstitutional.

## IV. STATEMENT OF FACTS

### I. THE CITY OF FORT SMITH'S MUNICIPAL COURT SYSTEM (aka District Court)

A. The City of Fort Smith, Arkansas is a municipality of approximately 86,200.

B. Under state law as a municipality, Fort Smith may pass ordinances that

criminalize, as misdemeanors, violations of its Code or Ordinance.

C. As a municipality, Fort Smith has passed ordinances that criminalize, as misdemeanors, violations of its Code or Ordinance, particularly the Nuisance Ordinance.

D. As a municipality, Fort Smith has created a Municipal Court called District Court, with jurisdiction to hear all violations of the Fort Smith Municipal Code, including criminal ones like its Nuisance Ordinance.

E. Fort Smith's municipal code and Nuisance Ordinance are enforced by the City Department called Neighborhood Services with help from Fort Smith Police Department.

F. When Neighborhood Services has law enforcement to criminally ticket an individual under the Fort Smith Nuisance Ordinance, the Fort Smith law enforcement officer will typically provide the individual with a document, called a "citation/summons," on which the individual is given a court date.

G. The citation/summons orders the defendant to appear at the Municipal District Court for an arraignment on a particular date.

H. If the defendant does not show up for her arraignment, an arrest warrant is issued.

I. At an arraignment, the defendant may plead guilty (or no contest) or elect to go to a bench trial. No public defender is ever appointed to the defendant.

J. At Fort Smith's Municipal District Court hearings, the Fort Smith City Attorney acts as the criminal prosecutor. One day a week has been set aside for so-called "Green Cases", or "Violations" of The City's Nuisance Ordinance.

(a) By limiting court hours to four sessions a month, providing few alternatives to appearing in person, failing to provide clear information on where and how to pay a ticket or even the clear amount of a potential fine for violating the Ordinance—in short, being opaque about how to comply with Fort Smith's Nuisance Ordinance enforcement processes—the municipal District court system in Fort Smith makes it difficult for defendants to readily resolve their cases, often leading to additional fees and fines and the prospect of arrest and loss of private property;

(b) The court appearance requirement is particularly difficult for low-income workers, single parents, those without access to reliable transportation, and those who have jobs that conflict with an assigned court session.

K. The Fort Smith Municipal District Court has authority to impose criminal penalties on violators of Fort Smith's Nuisance Ordinance and order "abatement actions", which among other acts includes The City hiring local for-profit contractors, often at 5 to 6 times the "normal" private sector rates for similar work and requiring City permits, to "bring the property into compliance" with the Nuisance Ordinance, often to the arbitrary "satisfaction" of a City Neighborhood Services inspector, attaching a 10% City fee, and placing a lien against the private property;

(a) The Nuisance Ordinance allows for up to $500 per day a property "remains in violation" but does not provide for appointment of counsel for indigent defendants nor separate process for "repeat" violations. However, if the defendant refuses to pay for an infraction, the Fort Smith Municipal District Court can institute criminal contempt proceedings which include additional fines, fees, and City court imposed costs;

(b) If the "violator" refuses to pay the contractor costs and fees The City can commence seizure and forfeiture proceedings against his private property and sell it at public auction to satisfy the City court imposed fees and costs. Many of the tickets, including Plaintiff's, do not involve actual public health or safety;

(c) The municipal District Court is not a court of record and defendants aren't told of their right to appeal to a court of record for a *de novo* review. When a defendant exercises his right to appeal the municipal District court judge converts the fines, costs, and fees he just imposed on the defendant into what he calls an "appeal bond" which the defendant must pay or he is blocked from appealing to a court of record. It is illegal to block a defendant from appealing a decision from a court of no record to a court of record for a *de novo* review on financial grounds.

II. THE CITY OF FORT SMITH HAS A FINANCIAL INCENTIVE TO COLLECT

FINES AND FEES REVENUE

L. Fort Smith is heavily dependent on revenues it derives from Neighborhood Services and law enforcement through its municipal District court, to the tune of approximately $3 million annually, to balance its budget.

M. Fort Smith budgets to receive municipal District court, Neighborhood Services, and law enforcement revenues in order to balance its budget.

III. FORT SMITH'S RELIANCE ON FINES AND FEES REVENUE DRIVES ITS CODE AND NUISANCE ORDINANCE ENFORCEMENT POLICIES AND PRACTICES

N. Fort Smith's budgetary reliance on fines, fees, and forfeiture revenues creates an incentive for its law enforcement officials (including officials in its police, code enforcement, and prosecutor departments, and independent contractors serving those departments) to maximize revenue.

**IV.** THE END RESULT

O. Fort Smith's code and Nuisance Ordinance enforcement, Neighborhood Services, and municipal District court system are relied upon to extract money and property from defendants.

P. Fort Smith's code and Nuisance Ordinance enforcement system does not react to violations, but proactively looks for "violations" in order to generate revenue (one Neighborhood Services "inspector" admits on cell phone video).

Q. The budgeting of an amount the City expects to receive from fines, fees, and forfeiture seizures sets a target for code and Nuisance Ordinance enforcement for Neighborhood Services and the District court to reach, regardless of the level of "violations" actually occurring in the City.

R. The budgeting of an amount the City expects to receive from fines and fees also creates an incentive for the City to ticket residents for petty or harmless "violations" that should not be subject to ticketing in the first instance.

S. The need to generate revenue creates an unconstitutional incentive for Fort Smith's  City prosecutor and municipal District court to convict a defendant, regardless of whether Fort Smith staff respond to this incentive;

**(a)** As such, the need to generate revenue creates a substantial risk of bias and prejudgment;

**(b)** This incentive to convict deprives the Plaintiff of the due process of the law and is an ongoing concern.

T. The ability to seek forfeiture of vehicles and other property provides yet another financial incentive for the Defendants whose budgetary needs create an incentive for their outsized and prolific City staff to devote resources to maximizing revenue instead of spending those resources on public safety.

U. Fort Smith's budgetary needs create an incentive for City staff, judge, and prosecutor to exercise "legal" discretion in a way that maximizes revenues at the expense of the public interest.

**V.** FORT SMITH'S RELIANCE ON FINES, FORFEITURES,  AND FEES REVENUE DRIVES THE

OPERATION OF ITS MUNICIPAL COURT

V. The City's budget is heavily dependent on its municipal court revenues. The Defendant's in the instant case can manipulate the operation of its municipal District court in order to generate revenue. Fort Smith's municipal District court and the City only collect fine revenue when it finds a defendant guilty;

(a) This means that Fort Smith officials have a financial interest, or an apparent financial interest, in convicting defendants;

(b) Therefore, The Defendant's budgetary dependence on municipal court revenues leads, or appears to lead, Fort Smith's municipal District court officials, including its judge, its prosecutor, and City staff to perform official duties in a way that maximizes revenues at the expense of the public interest.

**VI.** PLAINTIFF HAS FIRST-HAND EXPERIENCE WITH FORT SMITH'S

TICKETING AND MUNICIPAL COURT SYSTEM

HISTORY

In 2015 Plaintiff was a very visible and outspoken figure in the City-wide effort called Take Back The Fort to change the form of City government and was often publicly critical of corruption and misuse of public trust and public funds by City staff. During that period, after hearing numerous reports of abuse and retaliation, he organized a petition drive to end the City Department he felt was the most corrupt and abusive, Neighborhood Services. The morning after he presented the petition to the City Board of Directors two Neighborhood Services trucks full of staff came to his home, trespassed onto his private property (even went around privacy fencing), and took several photos and video of his home and property but offered no explanation; a "Courtesy Notice" of "violations" of the City's Nuisance Ordinance was left with Plaintiff. Half the "violations" listed on the "Courtesy Notice" were non existent, however, a few days later another Neighborhood Services "inspectors" showed up for what he called a "follow up visit" where other "violations" were noted and Plaintiff was threatened with ticketing and loss of his home and private property. The "follow up visits" like this continued for months, each time another "violation" was noted on a "Courtesy Notice" and more threats were made to Plaintiff and his family. On one occasion two male Neighborhood Services "inspectors" trespassed onto Plaintiff's private property (came around his privacy fence) and ordered Plaintiff's two young daughter's, who were playing, into the house. Plaintiff's then-pregnant wife suffered from preeclampsia and serious complications from the stress caused by Neighborhood Services staff and almost lost the baby as a result.

On numerous occasions during the same period Neighborhood Services staff used telescopic lenses taking pictures from several blocks away of "violations" of their Nuisance Ordinance. Among others things, "grass in excess of the required 6 inches" was cited, though it was impossible to tell the actual height, wasn't visible from elsewhere, was in the backyard, and was explained as being grown for a small disabled horse Plaintiff's daughter cares for. Another "violation" was a small freezer Plaintiff kept on his back porch, only visible to trespassers. These activities and conditions are not nuisances or violations, and the City cannot abate them or issue fines regarding them, because they do not cause any harm to others or to the named Plaintiffs themselves. Ongoing yard projects, some small logs out of normal view assembled for "hurdles" for his children's obstacle course, Plaintiff's own operable vehicle, a camper project out of "normal" sight in the backyard, a blackberry bush plot and small natural habitat maintained by Plaintiff, firewood being seasoned, all behind privacy fence and screening and not a single health or public safety concern, became "violations" used by the City and staff to threaten and intimidate Plaintiff and his family for months. Public health and safety was NEVER the point of Neighborhood Services and The City's actions against Plaintiff. At every turn Neighborhood Services staff and The City acted with outright malice toward Plaintiff and his family using conditions and activities that weren't harmless to anyone, even the Plaintiff, and twisting them to serve their purposes. Plaintiff pleaded with Neighborhood Services "bosses" all the way up the chain to Defendant Geffken for relief but his pleas repeatedly fell on deaf ears.

On March 22, 2016 Plaintiff received a call at work from his pregnant wife stating that another Neighborhood Services "inspector" had been at their home for almost two hours filming and wouldn't let her leave for a doctor's appointment unless she signed a copy of another "Courtesy Notice" for "violations" of the City's Nuisance Ordinance. Not getting any help whatsoever from anyone at City Hall, Plaintiff filed a Complaint and Emergency Restraining Order with this Court. Six weeks later the Defendants made good on their threats to cite Plaintiff and a Misdemeanor criminal ticket was written against him alleging violation of the City's Nuisance Ordinance "Failure to Maintain Premises" (though he had to find this out later after some research as the ticket wasn't clear) and delivered by two Fort Smith police officers who witnessed the maintained condition of Plaintiff's home. The City's attorney in the federal case immediately sought and was granted an abstention under *Younger v Harris.*

At a bench trial in municipal District court Plaintiff was not appointed an attorney though he was under threat of jail and losing his home if he failed to follow the edict of the municipal District court judge. Plaintiff had to take off work and lost his job to attend the court dates; if he hadn't called the municipal District court clerk frequently he would've missed two of the dates as no notice had been made to him. No search warrant for any of the numerous searches and seizures of photos and video at Plaintiff's home and private property was ever obtained; all City staff relied exclusively on the Nuisance Ordinance. Everything Plaintiff had

ever said during the months of "inspections" was recorded by City staff and used against him, though he was never warned. Neighborhood Services staff had even manufactured authority and typed it up on a sheet of paper which they then presented to every one of Plaintiff's neighbors and demanded access onto their property to search for "violations" on Plaintiff's private property. Plaintiff, a layman, was forced to mount a defense in municipal District court's "Green Cases" court day or face jail and loss of his home. Plaintiff had to file and pay the copying costs of an FOIA to the City and Neighborhood Services just to find out what information was being used against him. Despite having called them as witnesses, the two police officers weren't present at trial. Eventually it became clear to the Plaintiff that it was a stacked deck. He was convicted by the municipal District court judge of violating the City's Nuisance Ordinance and ordered to pay a fine and costs of nearly $300. When Plaintiff informed the judge of his intention to appeal to a court of record the judge converted the fines and costs into an "appeal bond" and informed the Plaintiff that he had to pay that in order to appeal to Circuit Court. Plaintiff pawned his wedding ring and paid the amount.

Circuit Court was a repeat of municipal District Court, no attorney, no Due Process, no Fourth or Fifth Amendment protections. Many other irregularities occurred as the Nuisance Ordinance was the only "law" allowed to be even mentioned (more than once the judge informed the Plaintiff that if he even mentioned the Constitution or any other law he would be jailed, though the City prosecutor was allowed to mention both many times). Plaintiff was convicted of violating City Nuisance Ordinance and ordered to pay nearly $600 in fines and costs in redundant punishments. Plaintiff sold his truck to hire an attorney to file an appeal to the Arkansas Court of Appeals on the constitutionality of the Nuisance Ordinance.

The City's Nuisance Ordinance, *"in addition to failing to provide sufficient warning to property owners as to what is and is not prohibited...leads to arbitrary enforcement by the City." Fort Smith v Noah Steffy* Ark. Ct. of Appeals Justices Kenneth Hixson and Waymond Brown (citing to the dissent). *"A stack of neat glass is likely to go unchallenged, but a stack of glass in disarray will likely result in a citation. A wicker chair brought from inside the house and placed on a porch is likely permissible for an elected official or prominent citizen, but not for another citizen. Particularly in light of the vague aspects of the ordinance, one could easily envision all sorts of ways in which the ordinance would present a danger of arbitrary and discriminatory application. For these reasons, I would hold that the ordinances are void for vagueness. Because the ordinances resulted in a denial of Noah's Due Process, I would reverse the judgment against him,"* (Justice Kenneth Hixson with Justice Waymond Brown joining). Id

W. Plaintiff has been threatened with tickets and actually ticketed by the City and anticipates being threatened with tickets or actually ticketed by the City in the future. The City has demonstrated no indication that it intends to halt its code or Nuisance Ordinance enforcement

policies or change its municipal code to remove provisions that have led to threats or tickets against the Plaintiff in the past;

(a) Plaintiff believe that he can not financially or physically keep up with the demands the City makes upon his property in the time periods the City has given him in the past;

(b) Like anyone with an older home, and like anyone with a garden, there potentially could be code violations on his property at any one time that Plaintiff is not aware of, even while trying to keep his property in order. The City could cite him for such violations in the future, just as it has in the past;

(c) But as a homeowner in Fort Smith, Plaintiff is subject to the jurisdiction of Fort Smith's municipal District court. He lives under the threat of being ticketed again by the Defendants code and Ordinance enforcement and law enforcement and convicted by Fort Smith's municipal District court personnel.

## CONSTITUTIONAL VIOLATIONS

### FIRST CLAIM FOR RELIEF

### (Due Process Clause Violation—Biased Adjudication)

Plaintiff realleges and incorporate by reference each and every allegation set forth above including paragraphs A through W.

### I.

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits judicial officers from having a direct or indirect financial interest in a proceeding, regardless of whether this interest is institutional or personal. Fort Smith's reliance on its civil and criminal Nuisance Ordinance to raise revenue creates an institutional incentive for the City and staff to ticket, convict, and fine defendants, regardless of the nature of an individual's offense.

### II.

Fort Smith's institutional reliance on revenue from fines, fees, and forfeitures creates a conflict between the City's pecuniary interest and the municipal District court personnel's obligations to be, and appear, disinterested and to serve the interests of justice. This conflict exists regardless of whether such personnel actually do violate their obligations to be disinterested and serve the interests of justice.

### III.

Fort Smith's institutional reliance on revenue from fines and fees creates an appearance of bias that results in a lack of Due Process of law in the trial of defendants charged before the Fort Smith Municipal District Court.

## IV.

Fort Smith's institutional pecuniary interest in raising revenue also creates an unconstitutional risk that irrelevant and impermissible factors can influence the decision to prosecute a defendant or the nature of any plea bargain or negotiated settlement of a civil or criminal enforcement action.

## V.

Fort Smith's institutional reliance on revenue from fines, fees, and forfeitures creates a conflict between the City's pecuniary interest and the prosecutor's obligation to be, and appear, disinterested and to serve the interests of justice. This conflict exists regardless of whether the prosecutor actually does violate his or her obligations to be disinterested and serve the interests of justice.

## VI.

Fort Smith's institutional reliance on revenue from fines, fees, and forfeitures creates a bias or an appearance of bias that results in a lack of Due Process of law in the trial of defendants charged by the Fort Smith city government.

## VII.

Because Fort Smith's policies, practices, and customs have created a situation where prosecutors and municipal court personnel have an incentive to convict and fine defendants, the City has violated, and will continue to violate, the Due Process rights of the Plaintiff. Making a harmless activity or condition illegal in order to generate revenue violates the Due Process Clause;

## VIII.

As a direct and proximate result of the City's actions, Plaintiffs has suffered irreparable injury to his constitutional rights.

## IX.

As a direct and proximate result of Fort Smith's policy, practice, and custom of administrating its prosecutorial efforts and its municipal District court in order to generate revenue, Plaintiff will suffer irreparable injury to his constitutional rights.

## X.

Declaratory and Emergency injunctive relief is necessary to remedy Fort Smith's unconstitutional conduct, or the appearance of the unconstitutional conduct, of ticketing, convicting, and fining defendants in order to generate revenue for the City. Without appropriate declaratory and Emergency injunctive relief, Fort Smith's unconstitutional policies and practices will continue.

### SECOND CLAIM FOR RELIEF

### (Due Process Clause Violation—Biased Prosecution and Law/Ordinance Enforcement)

Plaintiffs reallege and incorporate by reference each and every allegation set forth above including paragraphs A through W.

## XI.

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that criminal prosecutors and law enforcement (and Ordinance enforcement) be neutral and objective.

## XII.

It is a violation of Due Process for prosecutors or law/ordinance enforcement to have a personal, or institutional, financial stake in the cases they prosecute. The Due Process Clause prevents the government from declaring that lawful and harmless activities and conditions constitute nuisances when such activities and conditions are not, in fact, nuisances and any harm that could arise from such activities and conditions would be remote and highly speculative;

## XIII.

Fort Smith has a massive financial interest in the cases that it brings, including "Green Cases". The City is largely dependent on obtaining, from the people that it prosecutes, fines, fees, and forfeitures revenues;

## XIV.

This financial interest distorts or threatens to distort Fort Smith's exercise of prosecutorial and law/ordinance enforcement discretion.

## XV.

This financial interest incentivizes Fort Smith personnel to obtain convictions at the expense of the public interest.

## XVI.

This financial interest incentivizes Fort Smith personnel to obtain

convictions at the expense of the stringent ethical responsibilities of prosecutors.

## XVII.

This financial interest incentivizes Fort Smith's law and ordinance enforcement personnel to vigorously issue tickets or citations, and prosecute them at the expense of the public interest.

## XVIII.

Because Fort Smith's policies, practices, and customs have created a situation where prosecutors and law enforcement have an incentive to convict and fine defendants, the City has violated, and will continue to violate, the Due Process rights of the Plaintiff.

## XIX.

As a direct and proximate result of the City's actions, Plaintiff has suffered irreparable injury to his constitutional rights.

## XX.

As a direct and proximate result of Fort Smith's policy, practice, and custom of administrating its prosecutorial efforts and law and ordinance enforcement in order to generate revenue, Plaintiffs will suffer irreparable injury to his constitutional rights.

## XXI.

Declaratory and Emergency injunctive relief is necessary to remedy Fort Smith's unconstitutional conduct, or appearance of unconstitutional conduct, of ticketing, convicting, and fining defendants in order to generate revenue for the City. Without appropriate declaratory and Emergency injunctive relief, Fort Smith's unconstitutional policies and practices will continue.

## THIRD CLAIM FOR RELIEF

**Violation of the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution via 42 U.S.C. § 1983**

Plaintiff realleges and incorporate by reference each and every allegation set forth above including paragraphs A through W.

### XXII.

The Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution prohibits the government from imposing a monetary penalty that is grossly disproportionate to the offense it is designed to punish.

### XXIII.

Using its Nuisance Ordinance The City makes harmless conditions and activities illegal and subject to fines and forfeiture of private property and ultimately imprisonment;

### XXIV.

In addition, the City imposes fines and imprisonment, or threatens fines or imprisonment, for harmless activities and conditions that are not mentioned in its Code;

### XXV.

Any fine imposed or property seized by Fort Smith for these harmless activities and conditions is excessive because none of these activities or conditions cause any harm to others or to the named Plaintiff himself;

### XXVI.

Instead, Fort Smith imposes these fines and costs, and seizes private property, for harmless activities and conditions as a method to generate revenue;

### XXVII,

As a direct and proximate result of the City's actions, the Plaintiff has suffered, and will continue to suffer, irreparable injury to his constitutional rights;

### XXVIII,

As a direct and proximate result of the City's policy, practice, and custom of fining Fort Smith residents for harmless activities and conditions, the Plaintiff will suffer irreparable injury to his constitutional rights;

### XXIX.

Declaratory and Emergency injunctive relief is necessary to remedy the City's unconstitutional conduct of targeting, ticketing, convicting, and fining defendants and seizing private property

for harmless activities and conditions. Without appropriate declaratory and injunctive relief, the City's unconstitutional policies and practices will continue.

### FOURTH CLAIM FOR RELIEF

### Nuisance Ordinance is Unconstitutional and Void for Vagueness

### XXX.

The Defendant's "Nuisance Ordinance", *prima facie*, can not be presumed to be constitutional as it does not give a person of ordinary intelligence fair notice of what is prohibited, requires such a person to guess at its meaning, and is so vague and standardless that it allows for arbitrary and discriminatory enforcement.

### XXXI.

The "Nuisance Ordinance" is so vague and standardless that it leaves judges free to decide, without any legally fixed standards, what is prohibited and what is not and what the punishment(s) are for "violations" on a case-by-case basis.

### XXXII.

The Plaintiff and his family have a fundamental right to be secure in their home and property and enjoy a reasonable expectation of privacy to be free from unreasonable searches and seizures. and free from excessive fines from being imposed.

### XXXIII.

The "Nuisance Ordinance" leaves basic policy matters in the criminal law field to City staff in the field and the municipal District court judge on an ad hoc and subjective basis.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

**1.** For a declaration and Emergency preliminary injunction that the Fort Smith's "Nuisance Ordinance" is void for vagueness and that Fort Smith's systemic policy, practice, and custom of budgeting for, and relying on, revenue from fines, fees, and forfeitures generated by its code and Nuisance Ordinance enforcement against harmless activities and conditions, policing, and

municipal District court systems violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and must be ceased immediately or the Defendants must show cause why a permanent injunction should not issue;

**2.** For a declaration that Fort Smith's systemic policy, practice, and custom of budgeting for revenue from fines, fees, and forfeitures imposed for violations of the Fort Smith Municipal Code and Nuisance Ordinance, and taking actions in order to meet that budgeted amount, violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

**3.** For issuance of Emergency preliminary and permanent injunctions restraining Fort Smith from acting in furtherance of policies, practices, or customs that violate Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

**4.** For a declaration that any fine issued for violations pursuant to the Nuisance Ordinance of the Fort Smith Municipal Code are excessive, in violation of the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution:

**5.** For an award of Compensatory damages in the amount of $18,475.00;

**6** For and award of Punitive Damages in the amount of $500,000.00;

**7.** For any further legal and equitable relief as this Court may deem just and proper in this case for these issues.

DATED this 15th day of March 2019 _N / ?_

Respectfully Submitted,

Noah Steffy, pro se Plaintiff

2405 High Street

Fort Smith, AR 72904

(479)494-0033

floatingrockllc@yahoo.com